# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

DONNA D. SANTEUFEMIO

     v.

ADVANCED PROGRAMS, INC.

Civil No. 25-cv-00392-TSM
Opinion No. 2026 DNH 004

## <u>ORDER ON DEFENDANT'S MOTION TO DISMISS</u>

Plaintiff Donna D. Santeufemio, who is 78 years old, claims that her former employer, Advanced Programs, Inc., unlawfully discriminated against her by terminating her employment because of her age. Doc. No. 1-1. On September 19, 2025, Santeufemio filed a Complaint against API in state court in which she asserted state law claims against Defendant for age discrimination under RSA Chapter 354-A and intentional infliction of emotional distress. <u>Id.</u> at pg. 1. On October 10, 2025, API removed the action to this court on the basis of diversity jurisdiction. Doc. No. 1 at ¶ 4.

The matter is before the court on Defendant's Motion to Dismiss. Doc. No. 6 at pg. 1. API argues that dismissal is warranted, pursuant to Fed. R. Civ. P. 12(b)(6), because Santeufemio's claims are barred by the terms of an Employment Separation Agreement and Release ("Separation Agreement") that Plaintiff signed at the time of her termination from API, and because Santeufemio failed to allege sufficient facts to support either of her claims against API. <u>Id.</u> at ¶ 2. Plaintiff opposes the motion. Doc. No. 7. She contends that the Separation Agreement is unenforceable because she was under duress at the time she signed it. <u>See</u> Doc. No. 7 at pgs. 2-5. She also contends that she alleged sufficient facts to state plausible claims for both age discrimination and intentional infliction of emotional distress. <u>See id.</u> at pgs. 5-9. After

consideration of the parties' written submissions and their oral arguments during a hearing on December 1, 2025, this court concludes that the Separation Agreement precludes Plaintiff's claims and that even if it were unenforceable, Santeufemio failed to allege adequate facts to support a plausible claim for relief under either legal theory. Accordingly, and for all the reasons detailed below, Defendant's Motion to Dismiss is granted.

## LEGAL STANDARD

API moves to dismiss Santeufemio's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 5 (1st Cir. 2011)). The court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible of judicial notice." Id. The court must then determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"In evaluating whether a complaint states a plausible claim, [the court] 'perform[s] [a] two-step analysis.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (third alteration in original) (quoting Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). "First, the court must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (internal quotations and citation omitted). "Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference

that the defendant is liable for the misconduct alleged." Id. (internal quotations and citation omitted). This second step requires the reviewing court to "draw on its judicial experience and common sense." Id. (internal quotations and citation omitted). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012) (internal quotations and citation omitted).

## BACKGROUND

The following facts are taken from Santeufemio's Complaint (Doc. No. 1-1) and the Separation Agreement (Doc. No. 6-2), which is referenced in the Complaint.

### *Plaintiff's History of Employment at API*

Santeufemio was born on August 5, 1947, and is 78 years old. Doc. No. 1-1 at ¶ 1. She began working for one of API's predecessors, Wang Laboratories ("Wang"), on July 5, 1978. Id. at ¶¶ 1, 8. Initially, Santeufemio worked in Wang's personnel department. Id. After a few years, she became an administrative secretary. Id. Wang later promoted Plaintiff to a position working directly with the company's research and development engineers. Id. Her responsibilities included assisting the engineers with product identification, organization and sales presentations to customers such as the United States State Department, the United States Department of Justice, and embassies around the world. Id. The company was acquired over the years by Getronics, Digital Net, and BAE. See id. at ¶ 9. Santeufemio remained employed and continued to perform the same work for Wang's successors. Id.

In late 2007, API purchased the company from BAE. Id. at ¶ 10. API is a corporation that maintains its headquarters in Columbia, Maryland, is registered to conduct business in New Hampshire, and operates a facility in Salem, New Hampshire. Id. at ¶ 2. On November 16, 2007,

API offered Santeufemio a position as a Senior Product Support Administrator.  Id. at ¶ 11.  The position involved the same job responsibilities that Plaintiff performed for API's predecessors and paid a base salary of $55,993.60.  Id.  Santeufemio accepted the offer and continued to work at API until her termination on August 28, 2024.  See id. at ¶¶ 1, 12.

Plaintiff alleges that she enjoyed yearly pay increases during her employment with API, and was earning an annual salary of $95,735.90 at the time of her termination.  Id. at ¶ 12.  She also alleges that she was a valued employee, as demonstrated by her annual Performance Reviews.  Id. at ¶ 13.  For example, Santeufemio alleges that API described her contributions as "significant" and her performance as "outstanding" in a January 2020 Performance Review.  Id.  It also noted that Santeufemio's "tenacious ability to keep documentation and engineers in line does not go unnoticed[,]" that "[h]er help organizing customer visits is greatly appreciated by engineering management and sales[,]" and that she should "keep up the good work."  Id.  According to Plaintiff, 2020 was the last year for which Defendant produced copies of her Performance Reviews.  See id. at ¶ 26.

Santeufemio claims that during the last several years when she worked for API, David Dangora ("Dangora"), API's Vice President of Engineering, asked her "perhaps 2 times" about her plans for retirement.  Id. at ¶ 14.  Plaintiff told Dangora that she had no plans to retire and he should not ask her again.  Id.  Dangora then stated that Mike Gormley, API's President and Chief Executive Officer ("CEO"), was asking about Plaintiff's retirement.  Id.  Santeufemio alleges that her age discrimination claim "is predicated, at this stage of the case without the benefit of litigation discovery, on the pressure she received about retirement from David Dangora at the instruction of API President and CEO Mike Gormley."  Id. at ¶ 18.

*Plaintiff's Termination from API and Execution of the Separation Agreement*

On August 28, 2024, Bradley Welsh ("Welsh"), a human resources employee from API's headquarters in Maryland, terminated Santeufemio's employment.  Id. at ¶ 5.  Plaintiff alleges that she was shocked and distraught by the termination, and that she began crying.  Id.  She also alleges that she asked Welsh what she did wrong and Welsh replied: "You didn't do anything wrong.  It was job elimination due to budget cuts, and no one was going to be hired to replace you."  Id. Santeufemio contends, without further detail, that Welsh's statement about budget cuts was merely a pretext for age discrimination.  Id. at ¶ 6.

After informing her of the termination, Welsh pressed Santeufemio to sign the Separation Agreement.  Id. at ¶ 5.  Plaintiff alleges that this occurred while she was still "in her distraught state" over the sudden loss of her job.  Id.  Although Santeufemio does not dispute that she executed the Separation Agreement on August 28, 2024, she contends that her conduct was not voluntary and that she entered into the Agreement under duress.  See Doc. No. 7 at pgs. 2-4.

Pursuant to the terms of the Separation Agreement, API agreed to pay Santeufemio "Separation Benefits" consisting of four weeks of her base salary as severance pay and one month of health benefits at the same level of coverage as she had on the date of her separation from the company.  See Doc. No. 6-2 at ¶ 3(a)-(b).  The Agreement expressly provided: "[e]mployee acknowledges that [API] has no obligation to provide Employee" with such Benefits, which "are provided strictly as an accommodation to Employee and as consideration for Employee's promises and her release set forth in this Agreement."  Id. at ¶ 3(c).  The "Release" provisions, which were set forth in paragraph 5 of the Separation Agreement, provided in relevant part as follows:

> In exchange for the Separation Benefits, Employee hereby releases and forever discharges the Company and its past, present and future officers, managers, directors, employees, agents, attorneys, successors and assigns (collectively, "Released Parties"), from any and all actions, causes of action, suits, claims, debts,

liabilities, obligations, covenants, contracts and demands whatsoever, administratively, at law or in equity, which Employee ever had, now has or may have, whether known or unknown, foreseen or unforeseen, actual or potential, from the beginning of time to the date hereof and including the date on which Employee executes this Agreement, arising from or related to, directly or indirectly, Employee's employment with the Company, or the termination thereof, whether the same are brought under any federal, state or local law or regulation, including, but not limited to the following:

(a)    any claim for discrimination or harassment based on age, race, color, sex, religion, handicap, genetics, physical or mental disability, national origin, ancestry, citizenship, pension qualification, marital status, familial status, occupation, sexual preference or sexual orientation, gender identity, political opinion or affiliation, or physical appearance, under any federal, state or local law, statute, regulation or ordinance, including without limitation, any claim under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991 (42 U.S.C. § 1981); the Age Discrimination in Employment Act (ADEA); the Older Workers Benefit Protection Act (OWBPA); the Americans with Disabilities Act; the Family and Medical Leave Act; the Equal Pay Act; the Worker Adjustment and Retraining Notification Act; the Employee Separation Income Security Act of 1974; the Fair Labor Standards Act; the Consolidated Omnibus Budget Reconciliation Act of 1985 (29 U.S.C. §§ 1161 et seq.); the Rehabilitation Act of 1973 (29 U.S.C. §§ 701 et seq.); the Equal Pay Act; Executive Order 11246; and Executive Order 11141; the Maryland Fair Employment Practices Act, Article 49B of the Annotated Code of Maryland; and §§ 12.200-12.213 of the Howard County Code all as may have been from time to time amended;
. . . .

(c)    any claim concerning disciplinary action or termination, including any claim of unjust, wrongful, discriminatory, retaliatory or tortious discharge or other adverse employment action (including any claim of whistleblowing), and any claim for arbitration;
. . . .

(e)    any rights or claims for any tort that Employee may allege, including any claim of negligence (including negligent infliction of emotional distress, negligent hiring, or negligent retention) and any claim of intentional tort (including libel, slander, assault, battery, and intentional infliction of emotional distress); and

(f)    any other claim under any other law, statute, regulation or ordinance relating to the employment relationship, or any other alleged violation of local, state or federal law, constitution, regulation or ordinance, and/or public policy.

Id. at ¶ 5.

In addition to the Release provisions, the Separation Agreement included a "Covenant Not to Sue" under which "Employee agrees not to file or participate in any civil action, lawsuit, claim, grievance, complaint or charge with any court or any state or federal or local agency, concerning or relating to any claim or matter released in this Agreement."  Id. at ¶ 7.  It also contained a paragraph, entitled "Waiver of Age Discrimination Claims," in which the employee expressly acknowledged that she was "waiving and releasing any rights [she] may have under the Age Discrimination in Employment Act of 1967 ('ADEA') and that this waiver and release is knowing and voluntary."  Id. at ¶ 6.  Additionally, under the terms of the Separation Agreement, the employee acknowledged and agreed in relevant part that, in accordance with the Older Workers Benefit Protection Act ("OWBPA"):

> Employee has been advised in writing that:
>
> (a)     Employee should consult with an attorney before signing this Agreement;
>
> (b)     Employee has twenty-one (21) days after the date on which Employee first received this Agreement (the "Review Period"), in which to review and consider this Agreement before signing it;
>
> (c)     Employee has seven (7) days after Employee signs this Agreement (the "Revocation Period") to revoke this Agreement;
>
> (d)     This Agreement will not become effective until the seven (7) day Revocation Period has expired;
> . . . .
>
> If Employee decides to sign this Agreement prior to expiration of the twenty-one (21) day Review Period, Employee acknowledges that Employee is doing so knowingly and voluntarily, and without any demand or inducement by the Company to do so.  Employee's signature on this Agreement is an express waiver of the twenty-one (21) day Review Period if Employee signs this Agreement prior to the expiration of the Review Period . . . .

Id. at ¶ 6 (emphasis omitted).

It is undisputed that Santeufemio did not revoke the Agreement within the seven-day Revocation Period.  See Doc. No. 1-1 at ¶ 5.  Instead, the Separation Agreement became effective and API paid Plaintiff one month's salary as severance and one month of health benefits.  Id.  At the time of her termination from API and her execution of the Separation Agreement, Santeufemio was 77 years old and had hoped to work for at least five more years.  See id. at ¶¶ 1, 15.

### Procedural Background

On December 7, 2024, slightly more than three months after Santeufemio's termination from API, Plaintiff's counsel sent Defendant a litigation hold instructing it to preserve all records and communications relating to its decision to discharge Plaintiff from employment.  Id. at ¶ 19. Subsequently, on January 13, 2025, Santeufemio filed a charge of age discrimination ("Charge") against API with the New Hampshire Commission for Human Rights ("NHCHR" or "Commission").  Id. at ¶ 17.  API moved to dismiss the Charge based on the release of liability contained in the Separation Agreement.  Id. at ¶ 20.  Santeufemio objected to API's motion on the grounds that she signed the Agreement under duress.  See id. at ¶ 21.  On March 12, 2025, a Commissioner from the NHCHR denied API's motion to dismiss.  Id.  In connection with her decision, the Commissioner reasoned that, in light of Santeufemio's claim of duress, "Complainant's state of mind when she signed the agreement [was] an issue of material fact which must be examined by the NHCHR."  Id.

Following NHCHR's denial of the motion to dismiss, API filed materials with the Commission in support of its defense to Plaintiff's administrative Charge.  Id. at ¶ 23.  Sanfeufemio claims that in its filing, API made disparaging statements about her workload and improper use of time.  Id.  Although Plaintiff provides no details about the substance of those statements, she alleges that Defendant's representations were "insulting and hurtful to [P]laintiff who proudly and

faithfully served API and its predecessors for 46 years." <u>Id.</u> at ¶ 24.  She also alleges that the representations were "pretextual, fabricated and made in bad faith." <u>Id.</u> at ¶ 23.

      The Commission's rules required API to produce all of Santeufemio's employment records, including any records relating to her work performance. <u>Id.</u> at ¶ 25.  According to Plaintiff, API produced her performance reviews for 2007-2008, as well as her performance reviews for each year thereafter through 2020, but failed to produce any reviews for 2021, 2022, or 2023.  <u>Id.</u> at ¶ 26.  Santeufemio contends that API's failure "to produce her 2021, 2022 and 2023 Performance Reviews creates the inference that those reviews contradict the negative, insulting and hurtful representations" that API made to the NHCHR in support of its defense to Plaintiff's Charge. <u>Id.</u> at ¶ 27.  She further contends that API's failure to produce those documents "creates the inference that the API Commission filings [were] pretextual, fabricated and made in bad faith." <u>Id.</u> at ¶ 28.  As of mid-September 2025, NHCHR had not appointed an investigator to investigate Plaintiff's discrimination Charge against API. <u>Id.</u> at ¶ 22.

      On September 19, 2025, Santeufemio filed this action against API in state superior court. <u>Id.</u> at pg. 1.  As alleged in her Complaint, Santeufemio seeks to hold API liable for age discrimination under RSA Chapter 354-A and intentional infliction of emotional distress ("IIED"). <u>See id.</u>  On October 10, 2025, API removed the action to this court based on diversity jurisdiction. <u>See</u> Doc. No. 1 at ¶ 4 (invoking diversity jurisdiction under 28 U.S.C. § 1332(a)(1) as grounds for removal of the case to federal court).  Four days later, on October 14, 2025, API filed the instant motion to dismiss.  Doc. No. 6.

**DISCUSSION**

**I.    Whether Santeufemio's Claims are Barred by the Separation Agreement**

API argues that Santeufemio's claims must be dismissed as a matter of law because they are barred by the terms of the Separation Agreement.  Doc. No. 6-1 at pgs. 1, 6-9.  Specifically, API argues that by entering into the Agreement, Santeufemio expressly released the company from liability for "all claims arising out of or relating to her employment, including those based on age discrimination, her termination, and any alleged intentional torts."  Id. at pg. 1.  It also argues that the Separation Agreement is enforceable because Santeufemio entered into it both knowingly and voluntarily.  Id. at pgs. 7-12.   API further contends that even if Plaintiff was under duress at the time she executed the Separation Agreement and did not sign it voluntarily, she nevertheless ratified the Agreement by accepting the severance and health benefits described therein and by failing to repudiate the Agreement until September 19, 2025, when she filed her Complaint in superior court.  Id. at pgs. 12-14.

Santeufemio does not dispute API's assertion that her claims fall within the scope of the release provisions of the Separation Agreement.  See Doc. No. 7 at pgs. 2-5.   However, she challenges API's assertion that she acted voluntarily when she signed the Agreement and that she waived her ability to object to its enforcement by ratifying the Separation Agreement.  See id.; Doc. No. 13 at pgs. 1-3.  According to Santeufemio, the alleged fact that Welsh "pressed" her into signing the Agreement while she was in a "distraught state" over her termination is sufficient to raise a jury question as to whether her decision to sign the document was voluntary or whether she was acting under duress.  See Doc. No. 7 at pgs. 3-5.  She also contends that she repudiated the Separation Agreement by no later than January 13, 2025, when she filed her Charge of age discrimination with the NHCHR.  Doc. No. 13 at pg. 2.  Thus, Santeufemio argues, in effect, that

the question of ratification is an issue of fact that cannot be determined on the pleadings and must await further development of the record. See id. For the reasons described below, this court finds that it is unnecessary to resolve the question whether Plaintiff was acting voluntarily or under duress when she signed the Separation Agreement because her allegations demonstrate that she ratified the Agreement when she accepted severance pay and benefits under the Agreement.

"In New Hampshire, contracts signed under economic duress are voidable" and "voidable contracts are subject to ratification." Abbadessa v. Moore Bus. Forms, Inc., 987 F.2d 18, 22-23 (1st Cir. 1993). "Since a contract executed under duress is voidable it is also subject to ratification." Id. at 23. "Ratification . . . mak[es] the once voidable contract fully enforceable." Keshishian v. CMC Radiologists, 142 N.H. 168, 173 (1997). Assuming for purposes of API's motion to dismiss that Santeufemio signed the Separation Agreement under duress, the critical question is whether API is entitled to dismissal of Plaintiff's claims because Santeufemio ratified the Agreement by her subsequent action.

"[G]enerally, a voidable contract will be deemed to have been ratified when the party who is entitled to avoid the contract 'does any act which amounts to a ratification after full knowledge of all the facts and circumstances.'" Abbadessa, 978 F.2d at 23 (quoting Sawtelle v. Tatone, 105 N.H. 398, 201 (1964)). "Acts amounting to ratification are payment or acceptance of the benefits of the contract and failure to repudiate the contract promptly." Id.; see also Keshishian, 142 N.H. at 173 ("Intention to ratify may be signified in many ways, including intentionally accepting benefits under the contract, remaining silent or acquiescing in the contract for a long period of time after an opportunity exists to have it declared void, or acting upon the contract by affirmatively acknowledging it or performing under it." (quotations and citation omitted)). Significantly, under New Hampshire law, "[a] party cannot treat the contract as binding and as rescinded at the same

11

time, and after he has elected to stand by the contract and receive the benefits it confers on him, and has thus ratified and confirmed it, he cannot thus rescind and repudiate it." Abbadessa, 987 F.2d at 24 (quoting Bechard v. Amey, 82 N.H. 462, 471 (1926)).

Here, Santeufemio alleges that on August 28, 2024, Welsh informed her that API was terminating her employment because her job was being eliminated due to budget cuts. Doc. No. 1-1 at ¶ 5. He also pressured her to sign the Separation Agreement releasing API from liability for her termination. Id. Although Santeufemio signed the Agreement on August 28, 2024, while still in a "distraught state" at the news of her termination, it is undisputed that she had seven days after signing the Separation Agreement to revoke it before it became effective. Id.; Doc. No. 6-2 at ¶ 6(c)-(d). It is also undisputed that Santeufemio did not revoke the Agreement within the seven-day period, and that she accepted the severance pay and health benefits promised under the Agreement. See Doc. No. 1-1 at ¶ 5. In doing so, Santeufemio acknowledged that API had no obligation to provide those benefits, and that API provided them "strictly as an accommodation to Employee and as consideration for Employee's promises and her release set forth in [the Separation] Agreement." Doc. No. 6-2 at ¶ 3(c). Plaintiff does not allege, nor does she argue, that she attempted to return the benefits she received under the Agreement, even after she filed her Charge of discrimination against API on January 13, 2025. See Doc. No. 1-1 at ¶ 17. Consequently, this court finds that she ratified the Agreement.

Nevertheless, Plaintiff asserts that the question of ratification cannot be decided on the pleadings because "[t]he issue of the timeliness of repudiation of a voidable contract is a jury question on the evidence." Doc. No. 13 at pg. 2. Thus, she maintains that the alleged fact that she filed a Charge of age discrimination with the NHCHR on January 13, 2025, fewer than five months after she signed the Separation Agreement, is sufficient to create a jury issue as to whether she

timely repudiated the Agreement's release provisions.  See id.  However, Santeufemio does not address the alleged fact that she accepted the benefits of the Separation Agreement.  See id. at pgs. 1-3.  Under New Hampshire law, "it is well settled that a party 'cannot treat [a] contract as binding and as rescinded at the same time.'"  Keshishian, 142 N.H. at 173 (alteration in original) (quoting Willoughby v. Moulton, 47 N.H. 205, 208 (1866)).  By accepting the Separation Benefits available under the Separation Agreement, Santeufemio treated the Agreement as binding.  See id. (explaining that "intentionally accepting benefits under [a] contract" signifies an intent to ratify the contract); Abbadessa, 987 F.2d at 24 (finding that appellants ratified resignation agreements releasing former employer from claims arising from their employment or termination from employment where they accepted benefits under their respective resignation agreements).[1] Therefore, the Separation Agreement is enforceable and bars Plaintiff's claims against API.

## II.    Whether Santeufemio Alleged Plausible Claims for Relief

API argues that it is also entitled to dismissal because Santeufemio did not allege sufficient facts to support a claim for age discrimination or for IIED.  Doc. No. 6-1 at pgs. 14-18.  With respect to Plaintiff's claim for age discrimination, API argues that it is entitled to judgment in its

---

[1] This court's conclusion that Santeufemio ratified the Separation Agreement under New Hampshire law by accepting and retaining the benefits of the Agreement is consistent with case law from other jurisdictions.  See, e.g., Halvorson v. Boy Scouts of Am., 215 F.3d 1326 (Table), 2000 WL 571933, at *3 (6th Cir. May 3, 2000) (noting that "[a]n agreement that is invalid due to duress or coercion can be ratified by retention of the consideration paid[,]" and ruling that plaintiff ratified release agreement by retaining the severance money he received for signing the agreement); Nicomedez v. AIG, No. 12 Civ. 490 (KBF), 2012 WL 5264560, at *4 (S.D.N.Y. Oct. 16, 2012) ("the defense of ratification by acceptance and retention of consideration remains in effect under New York law."); Aikins v. Tosco Refining Co., Inc., No. C-98-00755-CRB, 1999 WL 179686, at *4 (N.D. Cal. Mar. 26, 1999) (noting that "[n]umerous federal courts hold that by accepting and retaining the benefits of a voidable release, a party ratifies the release and cannot avoid its obligations . . . Thus, when plaintiffs choose to retain the severance benefits paid in consideration for signing a release, they express their intention to be bound by the release and make a new promise to abide by its terms.").

favor because Santeufemio failed to allege any facts supporting discriminatory intent.  Id. at pgs. 15-17.  API also argues that the IIED claim should be dismissed because Santeufemio failed to allege facts showing that API engaged in extreme and outrageous conduct and because her claim is barred by the exclusivity provision of the New Hampshire workers' compensation statute.  Id. at pgs. 17-20.  Santeufemio maintains that she alleged sufficient facts to withstand dismissal at this stage in the litigation, and that the worker's compensation law is inapplicable to the circumstances alleged in her Complaint.  See Doc. No. 7 at pgs. 5-9.  For the reasons that follow, this court concludes that Santeufemio failed to state a plausible claim of age discrimination or IIED, and that her Complaint must be dismissed for this reason as well.

A.  Plaintiff's Claim for Age Discrimination

Santeufemio's first claim against API consists of a claim for age discrimination under RSA Chapter 354-A.  See Doc. No. 1-1 at pg. 1.  RSA 354-A:7 provides in relevant part that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer, because of the age . . . of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . ."  RSA 354-A:7, I.  Accordingly, the statute makes it unlawful for an employer to discriminate against an employee because of her age.

To establish a prima facie case of age discrimination for purposes of a claim under RSA 354-A:7, I, Santeufemio "must show [1] that she was of advanced age when she was terminated, [2] that she was qualified for the job and was meeting [API's] reasonable expectations, [3] that she was terminated, and [4] that [API] filled her position with someone younger or did not treat age neutrally in that selection."  Wilson v. Calamar Mgmt. Grp., LLC, No. 18-cv-551-JD, 2019 WL

4542770, at *3 (D.N.H. Sept. 19, 2019) (footnote omitted).[2]  Although an employee "need not plead facts sufficient to establish a prima facie case" at the motion to dismiss stage of the litigation, she "must plead enough facts to make entitlement to relief plausible[.]"  Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013).   Here, Santeufemio fails to allege sufficient facts to meet the plausibility standard.

Plaintiff alleges that she was 77 years old when API terminated her employment.  See Doc. No. 1-1 at ¶ 1.  This is sufficient to show that she was a person of advanced age at the time of the events giving rise to her claims.  See Wilson, 2019 WL 4542770, at *3 (finding that plaintiff satisfied the requirement of showing that she was a person of advanced age for purposes of her discrimination claim under RSA Chapter 354-A where the record demonstrated that she was approximately 60 years old at the time of her termination).   Santeufemio also alleges that she enjoyed annual pay increases and received positive performance reviews throughout her employment with API.  Doc. No. 1-1 at ¶¶ 12-13.  Those facts are adequate to satisfy the second element of a prima facie case of age discrimination at this early stage in the litigation.  See Merrick v. Franey Med. Lab, Inc., No. 19-cv-11002-LTS, 2019 WL 4542515, at *2 (D. Mass. Sept. 19, 2019) (finding that plaintiff adequately asserted that she was qualified for her job and met her employer's legitimate expectations where she alleged that she received positive performance evaluations).  Moreover, there is no question that API terminated Plaintiff from her job and that its action constituted an adverse employment action.  See id. (finding that plaintiff's termination

---

[2] Both the New Hampshire Supreme Court and this court "look[ ] to federal cases interpreting federal discrimination laws to interpret NH RSA chapter 354-A:7, I."  Wilson, 2019 WL 4542770, at *2.  Therefore, it is appropriate for this court to look to federal case law interpreting federal discrimination law, including the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, in evaluating whether Santeufemio alleges a plausible claim for age discrimination under RSA Chapter 354-A.

constituted an "adverse employment action" and satisfied the third element of her prima facie case of age discrimination). However, Santeufemio alleges no facts showing that API filled her position with a younger employee or failed to treat her age neutrally when it terminated her employment. Accordingly, she failed to allege a plausible claim for age discrimination.

Santeufemio alleges that at the time of her termination, Welsh told her that API was eliminating her job "due to budget cuts, and no one was going to be hired to replace [her]." Doc. No. 1-1 at ¶ 5. Plaintiff does not allege any facts showing that API did in fact hire a replacement, much less a replacement who was younger than Santeufemio. Nor does she claim that Welsh made any statements about her age at the time he informed her that she was losing her job. Although Santeufemio does allege that Welsh's statement "that her job was eliminated for budget reasons is a bad faith pretext common to the defense of age discrimination cases" Doc. No. 1-1 at ¶ 6, such conclusory allegations are insufficient to withstand Defendant's motion to dismiss. See, e.g., Santay v. Ice House LLC, No. 24-cv-11583-ADB, 2024 WL 4804967, at *4 (D. Mass. Nov. 15, 2024) (dismissing discrimination claims where plaintiff failed to allege "any facts to indicate that [her] firing was a pretext for discrimination."); Merrick, 2019 WL 4542515, at *2 (dismissing age discrimination claim where plaintiff failed to allege "any facts 'demonstrating a causal connection between [her] age' and her termination." (alteration in original) (quoting Higgins v. State St. Corp., 323 F. Supp. 3d 203, 206 (D. Mass. 2018)). Instead, Plaintiff must allege facts establishing a "causal connection" between her age and API's decision to terminate her employment. See Higgins, 323 F. Supp. 3d at 207 (finding that plaintiff failed to state a plausible claim for relief where he did not allege "a 'causal connection'" between the adverse employment action and his age).

Santeufemio alleges that at this stage in the litigation, her age discrimination claim "is predicated . . . on the pressure she received about retirement from David Dangora at the instruction of API President and CEO Mike Gormley."  Doc. No. 1-1 at ¶ 18.  Thus, her effort to link her age to API's decision to terminate her is based on the "perhaps 2 times" in the "last several years prior to her termination" when Dangora, API's Vice President of Engineering, allegedly asked her about her plans for retirement, as well as Dangora's alleged statement that Mike Gormley, API's President and CEO, was asking Dangora about Plaintiff's intentions regarding retirement.  See id. at ¶ 14.  Under the relevant case law, however, such "brief, stray remarks" made outside of the termination process are insufficient to allege discriminatory intent.  Wallace v. O.C. Tanner Recognition Co., 299 F.3d 96, 100 (1st Cir. 2002); see also Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 13 (1st Cir. 1998) (asking plaintiff "how old he was and when he planned to retire" was "a textbook example of an isolated remark which demonstrates nothing" regarding defendant's intent).  "[C]ompany officials are permitted to gather information relevant to personnel planning without raising the specter of age discrimination."  Wallace, 299 F.3d at 100.  Consequently, Dangora's comments alone fail to support a plausible claim for relief under RSA Chapter 354-A.

Santeufemio also relies on the Supreme Court's decision in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000), to argue that she can establish discriminatory intent by alleging facts showing that API's justification for her termination was not credible.  See Doc. No. 7 at pgs. 6-8.  In Reeves, the Supreme Court ruled that a plaintiff can prove a claim of age discrimination "when the plaintiff's case consists exclusively of a prima facie case of [age] discrimination and sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action."  Reeves, 530 U.S. at 137, 148.  Thus, in that case, it was undisputed that plaintiff established a prima facie case of age discrimination by presenting evidence showing

that he was old enough to merit protection from discrimination under the ADEA, he was qualified to perform the job from which he was discharged, his employer terminated his employment, and his employer "successively hired three persons in their thirties to fill [his] position."  Id. at 142. Because the employer offered admissible evidence sufficient to show that it had a legitimate, nondiscriminatory explanation for firing plaintiff, the "sole remaining issue" in Reeves was whether the plaintiff could present evidence showing that the employer's explanation for its actions was merely a pretext for discrimination.  Id. at 142-43.  The Supreme Court concluded that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification [for its adverse employment action] is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Id. at 148.

In the instant case, Santeufemio asserts that she alleged adequate facts to show that API's representations to the NHCHR regarding the reasons for her termination were not credible.  See Doc. No. 7 at pg. 7. As Santeufemio argues:

> API, in its [NHCHR] filings, took a different tack to justify [Plaintiff's] termination.  [Instead of relying on budget cuts to justify the termination,] Defendant's filings before the Commission attacked Mrs. Santeufemio's work, her job performance and the use of her time.  The attacks on her and her work were insulting and hurtful.  Complaint, paragraphs 23, 24 and 31. Mrs. Santeufemio enjoyed decades of fine performance reviews and regular salary increases in a job she loved.  Complaint, paragraphs 12, 13 and 27. Commission rules required API to produce all of Mrs. Santeufemio's performance reviews.  API did not produce her performance reviews for the three years next preceding her termination 2021, 2022 and 2023.  The failure of API to produce those reviews is evidence that the reviews contradict the negative, insulting and hurtful statements made to the Commission about her job performance.  The failure to produce the reviews is evidence that API's representations to the Commission were pretextual, fabricated and made in bad faith.  Complaint, paragraphs 25, 26, 27 and 28.

Id.

Santeufemio cannot avoid the dismissal of her claim on this basis.  Unlike the plaintiff in Reeves, Santeufemio failed to allege sufficient facts to support a prima facie case of age discrimination because she did not allege facts showing that API replaced her with someone younger or that API failed to treat age neutrally in connection with  her termination.  See Wilson, 2019 WL 4542770, at *3 (describing elements of a prima facie case of age discrimination under RSA Chapter 354-A).   Nor did she allege any facts to support an inference that age was a factor in API's decision.  Courts in this circuit routinely dismiss age discrimination cases in which plaintiffs fail to allege facts showing a causal connection between a plaintiff's age and an adverse employment action.  See Lewis v. T-Mobile USA, Inc., No. 1:21-cv-00224-GZS, 2021 WL 6135558, at *2 (D. Me. Dec. 29, 2021) (recommending dismissal of age discrimination claim where plaintiff "alleged no facts that would support a finding that age was a factor in the elimination of his position."), adopted by 2022 WL 444457 (D. Me. Feb. 14, 2022); Merrick, 2019 WL 4542515, at *2 (dismissing age discrimination claim where plaintiff offered no facts suggesting that defendant terminated her "because of discriminatory animus based on . . . age." (punctuation in original) (quoting Bottomley v. Bos. Pub. Sch., No. 1:17-CV-12107-LTS, 2018 WL 6682764 at *3 (D. Mass. Dec. 19, 2018)); Lustgarten v. Lowe's Home Ctrs., LLC, No. 2:15-cv-289-NT, 2015 WL 7312442, at *3 (D. Me. Nov. 19, 2015) (dismissing age discrimination claim where plaintiff pled no facts, as opposed to conclusory allegations, suggesting an age-based discriminatory motive for his termination); Williams v. Shinseki, No. 11-40030-TSH, 2013 WL 1336360, at **4-5 (D. Mass. Mar. 29, 2013) (dismissing age discrimination claim where plaintiff alleged no facts suggesting a discriminatory motive and the only reference to age consisted of plaintiff's allegation that he was over 60 years old).  Even assuming Santeufemio alleged sufficient facts to undermine the credibility of API's explanation for her termination, which she did not, her

19

failure to link her termination to her advanced age is fatal to her claim for age discrimination. Therefore, API's motion to dismiss that claim is granted.

    B.  <u>Plaintiff's Claim for Intentional Infliction of Emotional Distress (IIED)</u>

    Santeufemio's second claim against API consists of a claim for IIED.  API argues that this claim must be dismissed because Santeufemio fails to allege facts showing that API's conduct was sufficiently extreme and outrageous to state a plausible claim for relief and because her claim is barred by the exclusivity provision of New Hampshire's workers' compensation statute.  Doc. No. 6-1 at pgs. 17-20.  This court agrees that Santeufemio's allegations are insufficient to support an IIED claim against API.  Accordingly, this court concludes that Defendant is entitled to dismissal on this basis and that it is unnecessary at this stage to determine whether the New Hampshire Workers' Compensation Act bars Plaintiff's IIED claim.

    Under New Hampshire law, "[t]he standard for making a claim of [IIED] is very high." Moss v Camp Pemigewassett, Inc., 312 F.3d 503, 511 (1st Cir. 2002).  To state such a claim, "a plaintiff must allege that a defendant: (1) by extreme and outrageous conduct, (2) intentionally or recklessly caused (3) severe emotional distress."  Doe v. West Alton Marina, LLC, 646 F. Supp. 3d 315, 321-22 (D.N.H. 2022).  "In determining whether conduct is extreme and outrageous, it is not enough that a person has 'acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice.'" Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009) (additional quotation marks omitted) (quoting <u>Restatement (Second) of Torts</u> § 46 comment *d* at 73 (1965)).  Rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community."  Id. (quoting Restatement (Second) of Torts § 46 comment *d* at 73 (1965)).  Santeufemio's allegations fail to meet this high bar.

In support of her claim for IIED, Santeufemio alleges that Welsh's conduct in terminating her after nearly fifty years of employment and "continuous fine performance reviews" constituted "an outrageous cruelty unacceptable in a workplace in organized society."  Doc. No. 1-1 at ¶ 30. She also alleges that API's false statements to the Commission regarding her job performance "compounded the outrageous cruelty of the termination."  Id. at ¶ 31.  Under New Hampshire law, however, an employer's conduct in terminating an employee is insufficient to support an IIED claim, even where the conduct is unlawful or otherwise reprehensible.  See Konefal v. Hollis/Brookline Coop. Sch. Dist., 143 N.H. 256, 260 (1998) ("Although discharging an employee may be illegal and reprehensible, a great deal more is required to approach outrageous conduct." (quotations, punctuation and citation omitted)).  Similarly, unjust criticism of an employee's performance, false accusations against an employee, negative and false performance reviews, and other demeaning actions by an employer are inadequate "as a matter of law to show intentional infliction of emotional distress."  Palmerini v. Fidelity Brokerage Servs. LLC, No. 12-cv-505-JD, 2014 WL 3401826, at *9 (D.N.H. July 9, 2014).  In short, the fact that API terminated Santeufemio after a long and successful history at the company and its predecessors, and lied about her work performance to the NHCHR, falls far short of the extreme and outrageous conduct necessary to maintain an IIED claim.  See, e.g., West Alton Marina, 646 F. Supp. 3d at 326 (allegations that defendants knew about and facilitated sexual abuse of minors in the workplace were sufficient to satisfy the extreme and outrageous conduct requirement of an IIED claim); Davis v. United Postal Serv., Inc., No. Civ. 02-585-B, 2003 WL 21146167, at *3 (D.N.H. May 16, 2003) (noting that "discrimination on the basis of disability, verbal harassment and retaliation are not, without more,

sufficient to support an [IIED] claim," but denying motion to dismiss based on plaintiff's allegation that defendant interfered with his access to medical care in retaliation for plaintiff's complaints about discrimination); Mikell, 158 N.H. at 729 (finding that teacher's false accusation of misconduct against a student who subsequently committed suicide did not "rise[ ] to the level of extreme and outrageous conduct necessary to sustain a claim for [IIED].").   Accordingly, Santeufemio fails to state a plausible claim for IIED against API and her claim must be dismissed.

## CONCLUSION

For all the reasons detailed herein, API's motion to dismiss (Doc. No. 6) is granted.  The clerk shall enter judgment and close the case.

SO ORDERED.

_____
Talesha L. Saint-Marc
United States Magistrate Judge

January 14, 2026

cc:    Counsel of record